IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01790-PAB-KAS

DOUBLE DIAMOND DISTRIBUTION LTD.,

     Plaintiff,

v.

CROCS, INC.,

     Defendant.

_____

**ORDER**
_____

     This matter comes before the Court on Defendant Crocs, Inc.'s Motion to Dismiss (Fed. R. Civ. P. 12(b)(6)) [Docket No. 7] and Defendant Crocs, Inc.'s Special Motion to Dismiss (C.R.S. § 13-20-1101) [Docket No. 8].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.    BACKGROUND**[1]

     Plaintiff Double Diamond Distribution Ltd. ("Double Diamond") is a Canadian corporation that sells shoes.  Docket No. 1 at 2, 24, ¶¶ 5, 118.  Defendant Crocs, Inc. ("Crocs") is a Delaware corporation that sells shoes.  *Id*. at 2-3, ¶¶ 6, 13.  Crocs and Double Diamond are competitors.  *Id*. at 27, ¶ 131.  Daniel Hart is Crocs' chief legal and administrative officer.  *Id*. at 2, ¶ 7.

     On April 3, 2006, Crocs filed a lawsuit (the "2006 Action") alleging infringement of Crocs' patents against several entities, including Double Diamond and U.S.A. Dawgs,

---

[1] The following facts are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true for the purpose of ruling on defendant's Rule 12(b)(6) motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Inc. ("Dawgs"), an affiliate of Double Diamond. *Id*. at 3, 5, ¶¶ 15-16, 24; *see also Crocs, Inc. v. Effervescent, Inc.*, *et al*., No. 06-cv-00605-PAB-MDB, Docket No. 1.  Trial was scheduled to begin on July 11, 2022.  Docket No. 1 at 6, ¶ 27.  On June 26, 2022, Double Diamond and Dawgs sent offers of judgment to Crocs pursuant to Rule 68 of the Federal Rules of Civil Procedure.  *Id*., ¶ 30.

> Double Diamond's Rule 68 offer of judgment stated:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure ("Rule 68"), Defendant Double Diamond Distribution, Ltd. ("Double Diamond") hereby offers to allow entry of judgment to be taken against Double Diamond as follows: Judgment in favor of Crocs, Inc. ("Crocs") against Double Diamond in the total amount of Fifty-Five Thousand Dollars ($55,000.00), which amount is inclusive of all interest, costs, and attorneys' fees otherwise recoverable by Crocs against Double Diamond in this action.  This judgment shall be in full and complete satisfaction of all of Crocs' claims against Double Diamond in this action.  In no event shall Double Diamond be liable for any claims against U.S.A. Dawgs, Inc. based on a "joint enterprise" theory or otherwise.

> This offer is made for the purposes specified in Rule 68 and is not to be construed either as an admission that Double Diamond is liable in this action or that Crocs has suffered any damage.

> For the avoidance of doubt, this offer pertains solely to Crocs' claims against Double Diamond and is without prejudice to any of Double Diamonds' claims or counterclaims in this action, including Double Diamonds' counterclaim under the Lanham Act.

> This offer is made pursuant to the provisions of Rule 68 and will be deemed withdrawn unless Crocs serves written notice of acceptance within fourteen (14) days of service.  If Crocs does not accept this offer, Crocs may become obligated to pay Double Diamonds' costs incurred after the making of this offer pursuant to Rule 68.

*Id*. at 6-7, ¶ 31 (quoting Docket No. 1-1).  Dawgs' offer of judgment contained similar language, except it offered a $6 million judgment that "shall only serve as an offset against any recovery Dawgs may obtain in this action; the judgment is not intended to waive any of Dawgs' rights under the Bankruptcy Code."  *Id*. at 7, ¶ 32 (quoting Docket

No. 1-2).  Dawgs' offer of judgment stated that "[t]his offer is made for the purposes specified in Rule 68 and is not to be construed either as an admission that Dawgs is liable in this action or that Crocs has suffered any damage."  Docket No. 1-2 at 2.

On July 9, 2022, Crocs filed a notice of acceptance of Double Diamond's Rule 68 offer of judgment.  Docket No. 1 at 8, ¶ 40.  Crocs stated, "[p]ursuant to Rule 68(a) of the Federal Rules of Civil Procedure, Plaintiff Crocs, Inc., through undersigned counsel, hereby accepts and provides notice that it has accepted Double Diamond Distribution, Ltd.'s Offer of Judgment Pursuant To F.R.C.P. 68, dated June 26, 2022, attached hereto as Exhibit A."  *Id*.; *see also Crocs*, No. 06-cv-00605-PAB-MDB, Docket No. 1178-2 at 1.  On July 9, 2022, Crocs also filed a notice of acceptance of Dawgs' Rule 68 offer of judgment.  Docket No. 1 at 8-9, ¶ 41; *see also Crocs,* No. 06-cv-00605-PAB-MDB, Docket No. 1177.

On July 12, 2022, the Clerk of Court entered the following final judgment:

Pursuant to the offers of judgment served by defendants on plaintiff on June 26, 2022 and the notices of acceptance of the offers of judgment filed on July 9, 2022, and in accordance with Federal Rule of Civil Procedure 68, it is

ORDERED that judgment shall enter in favor of plaintiff Crocs, Inc. and against defendant Double Diamond Distribution, Ltd. in the amount of $55,000.00, inclusive of all interest, costs, and attorneys' fees otherwise recoverable and in full and complete satisfaction of all of plaintiff's claims against Double Diamond Distribution, Ltd. in this action.  It is further

ORDERED that judgment shall enter in favor of plaintiff Crocs, Inc. and against defendant U.S.A. Dawgs, Inc. in the amount of $6,000,000.00, inclusive of all interest, costs, and attorneys' fees otherwise recoverable and in full and complete satisfaction of all of plaintiff's claims against U.S.A. Dawgs, Inc. in this action.  It is further

ORDERED that this case is closed.

Docket No. 1 at 9-10, ¶ 43 (quoting Docket No. 1-3); *see also Crocs*, No. 06-cv-00605-PAB-MDB, Docket No. 1182.

On July 13, 2022, Crocs issued a press release on its website.  Docket No. 1 at 11, ¶ 52.  The press release states:

> **Crocs secures long sought-after judgment of infringement against USA Dawgs and Double Diamond Distribution**
>
> July 13, 2022
>
> BROOMFIELD, Colo., July 13, 2022 /PRNewswire/ -- Crocs, Inc. (NADSAQ: CROX), a global leader in innovative casual footwear for women, men and children, announced a judgment of infringement against USA Dawgs and Double Diamond Distribution as a result of both companies' sales of imitation Crocs shoes.  In conjunction therewith, Crocs also obtained $6 million and $55,000 in damages, respectively, against the companies.
>
> This case is the culmination of years long battles between the parties after USA Dawgs and Double Diamond Distribution began selling shoes that infringed Crocs' patents in 2006.  Both USA Dawgs and Double Diamond Distribution have since conceded the validity of Crocs' patent rights.
>
> "We are fiercely protective of the Crocs brand and our iconic DNA.  We have zero tolerance for infringement of our intellectual property rights or for anyone who tries to benefit off the investments that we have made in our brand," said Daniel Hart, Executive Vice President and Chief Legal & Risk Officer at Crocs.  "This judgment not only reinforces the validity of our patent rights, it also reinforces our unrelenting determination to take forceful steps to protect our brand equity."
>
> This judgment of infringement comes nearly one year to the day after Crocs filed lawsuits against 21 companies alleging infringement of its registered trademark rights in its clog designs.  The lawsuits, filed at the International Trade Commission in addition to various U.S. District Courts around the country, seek an exclusion order against infringing product in addition to monetary damages for violations of Crocs' three dimensional trademark rights.
>
> **About Crocs, Inc**.
>
> Crocs, Inc. (Nasdaq: CROX) is a world leader in innovative casual footwear for women, men, and children, combining comfort and style with a value that consumers know and love.  The Company's brands include Crocs and HEYDUDE and its products are sold in more than 85 countries through

wholesale and direct-to-consumer channels.  For more information on Crocs, Inc. please visit investors.crocs.com.  To learn more about our brands, please visit www.crocs.com or www.heydudeshoesusa.com or follow @Crocs or @heydudeshoes on Facebook, Instagram and Twitter.

Docket No. 1-4 at 1; *see also* Docket No. 1 at 11, ¶ 52.  Crocs published the press release on its website and had the press release published and distributed to third parties via PRNewswire.  Docket No. 1 at 11, ¶ 52.  Specifically, using PRNewswire, Crocs published and distributed the press release to "440,000+ Newsrooms, websites, direct feeds, journalists and influencers."  *Id*. at 12, ¶ 53.  The websites that posted the press release have a combined viewership of 6 billion people per month.  *Id*. at 17, ¶ 66.  Crocs made the statements in the press release to receive substantial benefits, including increased sales and brand differentiation.  *Id*. at 18, ¶ 73.  The statements in the press release have harmed Double Diamond's business reputation, brand, and goodwill.  *Id*. at 22, ¶ 99.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting

*Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

III.   **ANALYSIS**

   A.  **Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

On August 1, 2023, Crocs filed a motion to dismiss all of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 7.  On August 22, 2023, Double

Diamond filed a response.  Docket No. 11.  On September 5, 2023, Crocs filed a reply.
Docket No. 17.[2]

### 1) *Defamation Claim*

Double Diamond's first cause of action asserts a defamation claim for Crocs'
statements in the press release.  Docket No. 1 at 21-23, ¶¶ 92-104.  Under Colorado
law, the elements of a defamation claim differ depending upon whether the statement
involves a matter of public concern or whether the plaintiff is a public or private figure.
*See Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 2528624, at *4 (D. Colo.
Mar. 15, 2023).[3]  If a statement involves a matter of public concern, a defamation claim
requires proof that the statement: (1) was defamatory; (2) was materially false; (3)
concerned the plaintiff; (4) was published to a third party; (5) with actual malice; and (6)
caused actual or special damages.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*.,
861 F.3d 1081, 1109 (10th Cir. 2017).

---

[2] The parties presume that Colorado law applies to plaintiff's state law claims.
*See* Docket No. 7 at 4-8; Docket No. 11 at 2-3, 6-9.  The Court will operate under the
same premise.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008)
("Because the parties' arguments assume that Colorado law applies, we will proceed
under the same assumption.").

[3] Neither party addresses whether the press release involves a matter of public
concern.  Whether a statement involves a matter of public concern is a question of law.
*Coomer*, 2023 WL 2528624, at *5.  Under Colorado law, a matter is of public concern
"when the public may reasonably be expected to have a legitimate interest in what is
being published" or when it "can be fairly considered as relating to any matter of
political, social, or other concern to the community."  *Id*. (internal quotations and
citations omitted); *see also Spacecon Specialty Contractors, LLC v. Bensinger*, 713
F.3d 1028, 1035 (10th Cir. 2013) ("in Colorado, public concern is interpreted broadly"
(internal alterations, quotations, and citation omitted)).  The Court finds that the press
release involves a matter of public concern because it discusses the conclusion of a 16-
year-long federal court case involving alleged patent infringement.  *See* Docket No. 1-4;
*see also Correll v. Under Sec'y of Com. of Intell. Prop*., 2022 WL 298125, at *2 (E.D.
Va. Jan. 13, 2022) (noting that "intellectual property matters are of public concern" for
First Amendment purposes).  Accordingly, the Court will apply the defamation test for
statements involving a matter of public concern.

"A statement may be defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1125 (D. Colo. 2016) (quoting *Burns v. McGraw–Hill Broadcasting Co., Inc.*, 659 P.2d 1351, 1357 (Colo. 1983)).  Determining whether a publication is "materially false requires examination of the published statements in context, not in isolation." *Brokers' Choice of Am.*, 861 F.3d at 1108.  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified." *Id.* at 1107 (alterations and citation omitted).  A statement is not "false" unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (citation omitted); *see also* Colo. Jury Instr., Civil 22:13 ("A statement is false if its substance or gist is contrary to the true facts.").  To be material, an alleged falsehood must be "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth." *Brokers' Choice of Am.*, 861 F.3d at 1107 (quoting *Bustos v. A & E Television Networks*, 646 F.3d 762, 765 (10th Cir. 2011)); *see also Fry v. Lee*, 408 P.3d 843, 854 (Colo. App. 2013).

Crocs argues that the Court should dismiss the defamation claim because the statements in the press release were "entirely accurate."  Docket No. 7 at 4.[4]  Crocs argues that the press release "accurately recounted that Crocs had obtained a judgment of infringement on claims concerning the sale of imitation shoes dating back to 2006, the damages awarded, and Crocs's enforcement efforts here and elsewhere." *Id.*

---

[4] Although Crocs does not specify which element of the defamation claim it is challenging, the Court construes this argument as challenging the second element. Crocs does not challenge any other elements of the defamation claim.  Accordingly, the Court declines to evaluate the other elements.

Crocs argues that, even if there was a minor inaccuracy in the press release, Colorado law recognizes that, in the context of a defamation claim, "technical errors in legal terminology and reports involving violation of the law are of no legal consequence." *Id*. at 5 (quoting *Barnett v. Denver Pub. Co.*, 36 P.3d 145, 148 (Colo. App. 2001)). Moreover, Crocs asserts that the "gist" of the press release was not false because other courts have made infringement findings in favor of Crocs and against Double Diamond. *Id*. at 4.

Double Diamond argues that the press release contains several false statements. Docket No. 11 at 3-4. Double Diamond argues that (1) Crocs did not obtain a "judgment of infringement" as a result of Double Diamond's "sales of imitation Crocs shoes;" (2) Crocs did not obtain damages against Double Diamond; (3) Double Diamond did not "concede[] the validity of Crocs' patent rights;" (4) there was no finding by the Court that Double Diamond "began selling shoes that infringed Crocs' patents in 2006;" and (5) the judgment did not reinforce the validity of Crocs' patent rights. *Id*. at 3 (quoting Docket No. 1-4). Double Diamond argues that a judgment arising from a Rule 68 offer of judgment is not determinative of or an admission of liability. *Id*. at 5.

Rule 68 of the Federal Rules of Civil Procedure provides that

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). "'The plain purpose of Rule 68 is to encourage settlement and avoid litigation' by 'prompt[ing] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the

merits.'" *Felders v. Bairett*, 885 F.3d 646, 651-52 (10th Cir. 2018) (quoting *Marek v. Chesny*, 473 U.S. 1, 5 (1985)).  A Rule 68 offer of judgment does not require an admission of liability.  *See Childress v. DeSilva Auto. Servs., LLC*, 494 F. Supp. 3d 1163, 1173 (D.N.M. 2020) (collecting cases holding that a "valid rule 68 offer allows judgment against the defendant, but such an offer does not require an admission of liability"); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 n.6 (4th Cir. 2011) (noting that Rule 68 does not require "an admission of liability by the defendant").  A party may disclaim an admission of liability in its offer of judgment.  *See, e.g., Childress*, 494 F. Supp. 3d at 1173; *Li v. Jewelers Mut. Ins. Co.*, No. 18-cv-01704-CMA-KLM, 2020 WL 13490511, at *1 (D. Colo. Apr. 28, 2020) (entering judgment where the offer of judgment contained the following condition: "Defendant's offer of judgment is not to be construed in any manner as an admission of liability by Defendant or that Plaintiff has suffered any damage, but rather was made solely for the purpose of compromising disputed claims"); *Roska v. Sneddon*, 366 F. App'x 930, 939 (10th Cir. 2010) (unpublished) (citing with approval *Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434, 435 (N.D. Ill. 1985) (holding that an offer of judgment was not defective on account of "no admission of liability" condition)); 12 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 3002 (3d ed. April 2023) (collecting cases holding that Rule 68 offers of judgment may "disclaim liability").  If a defendant's offer of judgment expressly disclaims an admission of liability and the plaintiff accepts that offer, the Court's judgment does not constitute a finding of or an admission of liability against the defendant.  *Childress*, 494 F. Supp. 3d at 1173.

Here, Double Diamond's offer of judgment stated that it would allow entry of judgment in favor of Crocs for $55,000 "in full and complete satisfaction of all of Crocs'

claims against Double Diamond" and the Rule 68 offer "is not to be construed either as
an admission that Double Diamond is liable in this action or that Crocs has suffered any
damage."  Docket No. 1 at 6-7, ¶ 31 (quoting Docket No. 1-1).  The offer of judgment
expressly disclaims an admission of liability.  *See id.*; *see also Childress*, 494 F. Supp.
3d at 1173.  Crocs accepted Double Diamond's offer of judgment.  Docket No. 1 at 8,
¶ 40.  The Court's final judgment stated that judgment shall enter in favor of Crocs and
against Double Diamond in the amount of $55,000.00 "in full and complete satisfaction
of all of plaintiff's claims against Double Diamond."  *Id.* at 9, ¶ 43 (quoting Docket No. 1-
3).

   The Court finds that the complaint plausibly establishes that the press release
contains materially false statements.  The press release states that Crocs obtained "a
judgment of infringement against USA Dawgs and Double Diamond Distribution as a
result of both companies' sales of imitation Crocs shoes."  Docket No. 1-4 at 1.  The
press release discusses how "[t]his judgment . . . reinforces the validity of [Crocs']
patent rights."  *Id.*  The Court finds that the complaint plausibly establishes that these
statements are false because the statements would have a "different effect on the mind
of the reader" from that which the Rule 68 offer of judgment would have produced.  *See
Brokers' Choice of Am.*, 861 F.3d at 1107.  The "gist" of the press release is that the
Court's judgment determined that Double Diamond sold shoes which infringed Crocs'
patents.  *See id.*; *see also* Docket No. 1-4 at 1.  However, the Rule 68 offer of judgment
stated that the offer of judgment "is not to be construed either as an admission that
Double Diamond is liable in this action or that Crocs has suffered any damage."  Docket
No. 1 at 6-7, ¶ 31 (quoting Docket No. 1-1).  The Court's judgment did not rule on the

validity of Crocs' patent rights or find that Double Diamond was liable for patent infringement.  *See generally* Docket No. 1 at 9, ¶ 43 (quoting Docket No. 1-3).  As a result, the substance or gist of the press release is contrary to the Rule 68 offer of judgment and the Court's final judgment.  *See Brokers' Choice of Am*., 861 F.3d at 1107; Colo. Jury Instr., Civil 22:13.[5]  Furthermore, the Court finds that Double Diamond has plausibly alleged that the false statements in the press release are material because the statements would likely cause reasonable people to think "significantly less favorably" about Double Diamond than they would if they knew the truth.  *See Brokers' Choice of Am*., 861 F.3d at 1107; Docket No. 1 at 22, ¶ 99 (alleging that the false statements have harmed Double Diamond's reputation, brand, and goodwill).  Accordingly, the Court finds that Double Diamond has plausibly established that the press release contains materially false statements, and the Court therefore denies this portion of defendant's motion.

### *2) Trade Libel Claim*

Double Diamond's second cause of action asserts a trade libel claim.  Docket No. 1 at 23, ¶¶ 105-113.  To establish a claim for trade libel under Colorado law, a plaintiff must prove the following elements: "(1) a false statement, (2) published to a third party, (3) derogatory to the plaintiff's business in general . . . or its quality, and (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest,

---

[5] The Court finds that Crocs' cited case, *Barnett*, is distinguishable.  In *Barnett*, a newspaper published an article stating that plaintiff was "convicted in a stalking incident," when plaintiff was actually convicted of "harassment."  *Barnett,* 36 P.3d at 147-48.  The court dismissed plaintiff's defamation claim, finding that the newspaper's use of the term "stalking" to describe plaintiff's conviction was substantially true because both offenses "describe similar repeated, unsolicited behavior."  *Id*. at 148.  In contrast, here, the press release did not consist of a minor, technical error in legal terminology.

or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages." *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 917-18 & n.3 (D. Colo. 2021), *aff'd sub nom. Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238 (10th Cir. 2022) (citation omitted).

Defendant argues that the Court should dismiss plaintiff's trade libel claim for the same reasons as the defamation claim, namely, that the press release is not false. Docket No. 7 at 5 (citing *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007) ("We believe that the Colorado Supreme Court would not recognize a product-disparagement claim relying entirely on expressions that could not support a defamation claim.")). Because the Court has found that Double Diamond plausibly established that the press release contains false statements, the Court denies this portion of defendant's motion.

### 3) *Lanham Act False Advertising Claim*

Double Diamond's third cause of action asserts a false advertising claim under the Lanham Act. Docket No. 1 at 24-25, ¶¶ 114-123. The Lanham Act prohibits a person from using, in commercial advertising or promotion, any "false or misleading description of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin" of his or another person's services or commercial activities. 15 U.S.C. § 1125(a)(1)(B); *Wilson v. AdvisorLaw LLC*, No. 17-cv-1525-MSK, 2018 WL 4932088, at * 3 (D. Colo. Oct. 11, 2018). A false advertising claim under the Lanham Act requires proof that: (1) defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's

product;" (2) defendant's "misrepresentation was material, in that it was likely to influence the purchasing decision;" (3) defendant's "misrepresentation actually deceived or had the tendency to deceive a substantial segment of its audience;" (4) defendant "placed the false or misleading statement in interstate commerce;" and (5) plaintiff "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643-44 (10th Cir. 2022) (internal quotations, alterations, and citations omitted); *see also Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *6 (D. Colo. Mar. 30, 2023).

In order to establish the first element, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Sycamore*, 29 F.4th at 644 (citation omitted); *see also Warming Trends*, 2023 WL 2713954, at *7. To constitute "commercial advertising or promotion" under the Lanham Act, a factual representation must be: 1) "commercial speech;" (2) "by a defendant who is in commercial competition with plaintiff;" (3) "for the purpose of influencing consumers to buy defendant's goods or services;" and (4) "must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) (citation omitted); *see also Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *14 (D. Colo. Mar. 30, 2023).

Crocs argues that Double Diamond has failed to allege the first element of the false advertising claim. Docket No. 7 at 5. Crocs claims that the press release was not

materially false or misleading because the contents of the press release were true. *Id*. Furthermore, Crocs argues that the press release is not "commercial advertising," because (a) the press release was directed at investors, not the relevant purchasing public; and (b) Double Diamond never alleges that the press release promoted Crocs' shoes to consumers. *Id*. at 6.

Double Diamond responds that the press release contained false statements. Docket No. 11 at 4. Double Diamond argues that the press release constitutes commercial advertising because Crocs published the press release on its website and had the press release published to 440,000 websites, newsrooms, and direct feeds using PRNewswire. *Id*. (citing Docket No. 1 at 11-12, ¶¶ 52-53). In addition, Double Diamond contends that the press release was made in conjunction with Crocs' promotion of its own brand because the press release states that Crocs "is a world leader in innovative casual footwear for women, men, and children, combining comfort and style with a value that consumers know and love." *Id*. at 4-5 (quoting Docket No. 1-4).[6]

For the same reasons discussed previously, the complaint plausibly alleges that the press release contains false or misleading representations of fact. Furthermore, the Court finds that Double Diamond has plausibly alleged that the press release is "commercial advertising" under the Lanham Act. *See Strauss*, 951 F.3d at 1267. Crocs and Double Diamond are competitors. Docket No. 1 at 27, ¶ 131. Double Diamond

---

[6] Double Diamond argues that the Court should presume deception because the press release is literally false and should presume a commercial injury because Double Diamond and Crocs are direct competitors. Docket No. 11 at 4-5. The Court declines to consider Double Diamond's arguments because Crocs did not challenge those elements of the Lanham Act claim. *See* Docket No. 17 at 4.

alleges that Crocs made false statements in the press release to receive substantial benefits, including increased sales and brand differentiation.  *Id.* at 18, ¶ 73.  The press release repeatedly references Crocs' brand and products.  *See* Docket No. 1-4 at 1. For example, the press release states that: (i) Crocs is "a global leader in innovative casual footwear for women, men and children;" (ii) Crocs is "fiercely protective of the Crocs brand and our iconic DNA;" (iii) Crocs combines "comfort and style with a value that consumers know and love;" and (iv) "[t]he Company's brands include Crocs and HEYDUDE and its products are sold in more than 85 countries through wholesale and direct-to-consumer channels . . . .  To learn more about our brands, please visit www.crocs.com or www.heydudeshoesusa.com or follow @Crocs or @heydudeshoes on Facebook, Instagram and Twitter."  *Id*.  At the motion to dismiss stage, the Court finds that Double Diamond has plausibly alleged that Crocs made the press release for the purpose of influencing consumers to buy Crocs' shoes, thereby establishing the third element of the commercial advertising test.  *See Strauss*, 951 F.3d at 1267; *see also Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 921-22 (finding that it was reasonable to infer that a company's tagline – which promoted its members as educated, tested, verified, and certified – would influence home inspectors to purchase a membership); *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 112 (6th Cir. 1995) (finding that an article was commercial speech because the article "refer[red] generally to Amcast products, and a rational jury could easily find that Amcast had an economic motivation for submitting the article").

Regarding the fourth element of the commercial advertising test, the complaint alleges that Crocs published the press release on its website and had the press release

published and distributed to third parties via PRNewswire.  Docket No. 1 at 11, ¶ 52.

Specifically, using PRNewswire, Crocs published and distributed the press release to

"440,000+ Newsrooms, websites, direct feeds, journalists and influencers."  *Id*. at 12,

¶ 53.  The websites that posted the press release have a combined viewership of 6

billion people per month.  *Id*. at 17, ¶ 66.  The Court finds that, at the motion to dismiss

stage, these allegations are sufficient to establish that the press release was

"disseminated sufficiently to the relevant purchasing public."  *See Strauss*, 951 F.3d at

1267; *cf. Warming Trends*, 2023 WL 2716652, at *15 (collecting cases holding that, at

the summary judgment stage, a plaintiff must provide evidence that potential customers

actually saw the false statements on the websites).  Accordingly, Double Diamond has

sufficiently alleged that the press release is commercial advertising under the Lanham

Act.  Because Double Diamond has plausibly alleged the first element of its false

advertising claim, the Court denies this portion of defendant's motion.

### 4) *Claim for Intentional Interference with Prospective Contractual Relations*

Double Diamond's fourth cause of action asserts a claim for intentional

interference with prospective contractual relations.  Docket No. 1 at 25-26, ¶¶ 124-128.

Under Colorado law, to state a claim for intentional interference with prospective

contractual relations, a plaintiff must establish that (i) the defendant induced a third

person not to enter into or continue a contractual relationship with plaintiff, or prevented

plaintiff from acquiring or continuing the prospective relation; (ii) the defendant did so

intentionally; and (iii) the defendant used improper means to do so.  *L-3 Commc'ns*

*Corp. v. Jaxon Eng'g & Maint., Inc*., 863 F. Supp. 2d 1066, 1085-86 (D. Colo. 2012)

(citing *MDM Group Assocs., Inc. v. CX Reinsurance Co*., 165 P.3d 882, 886 (Colo. App.

2007)); *see also Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.*, No. 19-cv-01749-WJM-SKC, 2021 WL 307509, at *5 (D. Colo. Jan. 29, 2021).  In order to qualify as a protected relationship, "there [must be] a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope."  *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)).

Crocs argues that Double Diamond has failed to plead a claim for intentional interference because the press release was not defamatory.  Docket No. 7 at 6 (citing *TMJ Implants*, 498 F.3d at 1201 ("If the alleged impropriety, however, is an allegedly defamatory statement, then the interference claim must fail if the statement is not an actionable defamation.")).  Crocs also contends that the complaint fails to identify a reasonable likelihood that any specific party would have done business with Double Diamond.  *Id.* (citing *Crocs*, 248 F. Supp. 3d at 1060).  Double Diamond responds that it has plausibly pled the falsity of the press release.  Docket No. 11 at 6.  Double Diamond argues that it does not need to allege a specific prospective business relationship that Crocs interfered with.  *Id.* at 6-7 & n.4.

The Court finds that the complaint contains no allegations "plausibly suggesting a reasonable likelihood of contracting with a particular third party."  *See Crocs*, 248 F. Supp. 3d at 1060; *see also IIT, Inc. v. Commc'ns Distributors, LLC*, No. 20-cv-01580-RM-STV, 2021 WL 5240243, at *6 (D. Colo. Jan. 27, 2021), *recommendation adopted*, 2021 WL 5240237 (D. Colo. Mar. 1, 2021).  In the absence of any allegations regarding a specific relationship with a third party, Double Diamond's claim is deficient.  *See Crocs*, 248 F. Supp. 3d at 1060.  Accordingly, the Court grants this portion of

defendant's motion and dismisses the intentional interference claim with prejudice. *See id.*[7]

### 5) *Claim under the Colorado Consumer Protection Act*

Double Diamond's fifth cause of action asserts a claim under the Colorado Consumer Protection Act ("CCPA"). Docket No. 1 at 26-27, ¶¶ 129-134. To state a claim under the CCPA, a plaintiff must establish the following elements:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Warming Trends*, 2023 WL 2713954, at *7 (quoting *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc*., 62 P.3d 142, 146-47 (Colo. 2003))); *see also Renfro v. Champion Petfoods USA, Inc*., 25 F.4th 1293, 1301 (10th Cir. 2022).

"Due to the CCPA's underlying goal of protecting consumers and the public, plaintiffs are prohibited from bringing purely private causes of action under the CCPA."

---

[7] In its response, Double Diamond states that, "should the Court perceive a deficiency in the Complaint, Double Diamond should be afforded the opportunity to amend its Complaint." Docket No. 11 at 9. This request for leave to amend does not comply with the Local Rules, which provide that a motion "shall not be included in a response or reply to the original motion," but must instead "be filed as a separate document." D.C.COLO.LCivR 7.1(d); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("A court need not grant leave to amend when a party fails to file a formal motion." (citation omitted)). However, in the absence of futility, undue delay, bad faith, or dilatory motive on the part of the plaintiff, leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Here, the Court finds that an amendment would be futile because Double Diamond has offered no facts suggesting that it could plead a reasonable likelihood of contracting with a particular third party.

*Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 919 (citing *Rocky Mountain Rhino Lining*, 62 P.3d at 149).  In analyzing the third element, a significant public impact, Colorado courts consider three factors: (1) "the number of consumers directly affected by the challenged practice," (2) the "relative sophistication and bargaining power of the [affected] consumers," and (3) "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future."  *Rocky Mountain Rhino Lining*, 62 P.3d at 149.  When a challenged trade practice affects "only a small fraction" of the entity's consumers, the impact on the public is not "significant" under the CCPA.  *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1113 (D. Colo. 2018) (citing *Rocky Mountain Rhino Lining*, 62 P.3d at 150).

Crocs argues that Double Diamond has failed to establish the first and third elements of the CCPA claim.  Docket No. 7 at 7.  Crocs argues that defamation is not actionable under the CCPA because it is a "purely private cause of action."  *Id.* (citing *Electrology Lab'y, Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1162 (D. Colo. 2016)).  Additionally, Crocs contends that Double Diamond has pled no facts suggesting that the press release significantly impacts the public as actual or potential consumers.  *Id.*

Double Diamond responds that the issuance and oversight of patents are a public right.  Docket No. 11 at 7-8.  Double Diamond argues that it has adequately alleged the significant public impact prong because Crocs published the press release on its website and had the press release published to over 440,000 websites and direct feeds using PRNewswire.  *Id.* at 8 (citing Docket No. 1 at 11-17, ¶¶ 52-66).  Double Diamond asserts that "[w]idespread advertisement directed to the market generally

which implicates the public as consumers can satisfy the 'significant public impact'" prong.  *Id.* (quoting *Electrology Lab'y*, 169 F. Supp. 3d at 1163).

The Court finds that Double Diamond has plausibly alleged the first element of its CCPA claim.  Under Colorado law, a person commits a "deceptive trade practice" when, in the course of the person's business, the person "[d]isparages the goods, services, property, or business of another by false or misleading representation of fact."  Colo. Rev. Stat. § 6-1-105(1)(h); *see also Farmland Partners Inc. v. Fortunae*, No. 18-cv-02351-RBJ, 2021 WL 1978739, at *3 (D. Colo. May 18, 2021).  For the reasons discussed previously, the Court finds that the complaint plausibly alleges that the press release disparaged Double Diamond's business by making a false or misleading representation of fact related to the judgment in the 2006 Action.

Regarding the third element, the complaint alleges that Crocs published the press release on its website and distributed the press release to "440,000+ Newsrooms, websites, direct feeds, journalists and influencers" using PRNewswire.  Docket No. 1 at 11-12, ¶¶ 52-53.  The websites that posted the press release have a combined viewership of 6 billion people per month.  *Id.* at 17, ¶ 66.  At the motion to dismiss stage, "where a defendant's misrepresentations are in the form of an advertisement directed generally to the public as potential or actual consumers, a significant public impact is presumed."  *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 5313540, at *6 (D. Colo. Dec. 17, 2010); *see also Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1207 (D. Colo. 2015); *cf. Warming Trends*, 2023 WL 2713954, at *8 ("Courts in this district have held that, at the summary judgment stage, a plaintiff cannot rely solely on the existence of misleading statements online to establish the public impact

element.").  The Court finds that, at the motion to dismiss stage, Double Diamond's allegations are sufficient to establish a presumption that the press release had a significant public impact.  *See Francis*, 2010 WL 5313540, at *6.  Accordingly, the Court denies this portion of defendant's motion.

### 6)  *Permanent Injunction Claim*

Double Diamond's sixth claim for relief is for a permanent injunction.  Docket No. 1 at 28, ¶¶ 135-36.  Crocs argues that the Court should dismiss the sixth claim because an injunction is a remedy, not a claim.  Docket No. 7 at 8 (citing *Dalkita, Inc. v. Devin Mills Consulting, LLC*, No. 18-cv-01398-PAB-SKC, 2019 WL 1242432, at *3 (D. Colo. Mar. 18, 2019)).  Double Diamond clarifies that it "seeks injunctive relief as a remedy, not a claim."  Docket No. 11 at 9 n.7.

The Court agrees that an injunction is a remedy rather than an independent cause of action.  Nevertheless, the Court "will allow the claim for injunctive relief to proceed to the extent it can be linked to [plaintiff's] other, substantive causes of action."  *Dalkita*, 2019 WL 1242432, at *3 (citations omitted).  Accordingly, the Court denies this portion of defendant's motion.

### B.  <ins>Special Motion to Dismiss under Colo. Rev. Stat. § 13-20-1101</ins>

On August 1, 2023, Crocs filed a special motion to dismiss pursuant to Colo. Rev. Stat. § 13-20-1101.  Docket No. 8.  On August 22, 2023, Double Diamond filed a response.  Docket No. 12.  On September 5, 2023, Crocs filed a reply.  Docket No. 18.[8]

---

[8] On September 21, 2023, Double Diamond filed a motion requesting leave to file a sur-reply.  Docket No. 21.  Crocs did not file a response to this motion.  The Court granted Double Diamond's motion, Docket No. 31, and Double Diamond filed its sur-reply.  Docket No. 34.

In 2019, the Colorado General Assembly enacted a statute to discourage strategic lawsuits against public participation (an "anti-SLAPP statute"), codified at Colo. Rev. Stat. § 13-20-1101.  *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1196 (D. Colo. 2023) (citing *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 245 & n.1 (Colo. App. 2022)).  "The statute's purpose is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.'"  *Salazar*, 522 P.3d at 246 (quoting Colo. Rev. Stat. § 13-20-1101(1)(b)).  The statute provides that

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim.

Colo. Rev. Stat. § 13-20-1101(3)(a); *see also Coomer*, 659 F. Supp. 3d at 1196 (noting that the statute provides a "special motion to dismiss" for screening out frivolous lawsuits intending to chill speech about matters of public concern).  A "prevailing defendant on a special motion to dismiss is entitled to recover the defendant's attorney fees and costs."  Colo. Rev. Stat. § 13-20-1101(4)(a).

The resolution of a special motion to dismiss involves a two-step process. *Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 2023 WL 8264904, at *3 (Colo. App. Nov. 30, 2023).  "At the first step, the defendant has the burden to show that the conduct underlying the plaintiff's claims falls within the statute — i.e., that the claim arises from the defendant's exercise of his or her right of petition or free speech."  *Id*. Under the statute, an act in furtherance of a right of petition or free speech includes:

(I) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law;

(II) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law;

(III) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

(IV) Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id*. (quoting Colo. Rev. Stat. § 13-20-1101(2)(a)).  "At this second step, the burden shifts to the plaintiff to establish a reasonable likelihood of prevailing on the claim." *Id*.; *see also Coomer*, 659 F. Supp. 3d at 1198.  "If the anti-SLAPP motion mounts a legal challenge, courts assess the motion under Federal Rule of Civil Procedure 12(b)(6)." *Moreau v. U.S. Olympic & Paralympic Comm*., 641 F. Supp. 3d 1122, 1133 (D. Colo. 2022).

As a preliminary matter, it is unclear whether Colo. Rev. Stat. § 13-20-1101 is applicable in federal courts.  *Compare Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 673 (10th Cir. 2018) (concluding that New Mexico's anti-SLAPP statute was inapplicable in federal courts because it was "procedural mechanism," not a "substantive right or remedy"), *with Moreau*, 641 F. Supp. 3d at 1127-33 & n.5 (concluding that Colorado's anti-SLAPP statute was applicable in federal courts and distinguishing the Tenth Circuit's decision in *Los Lobos Renewable Power*). Both parties assume that Colo. Rev. Stat. § 13-20-1101 is applicable in federal courts. *See* Docket No. 8 at 2-3; Docket No. 12 at 2-3.

Assuming Colorado's anti-SLAPP statute is applicable in federal courts, the Court denies Crocs' motion.  Crocs asserts that its special motion "mounts a legal challenge" and thus should be reviewed under Fed. R. Civ. P. 12(b)(6).  Docket No. 8 at 3.  Incorporating its arguments from the Rule 12(b)(6) motion, Crocs argues that Double Diamond cannot establish a reasonable likelihood of success on its claims because the statements in the press release are "true."  *Id*. at 4-5 (citing Docket No. 7 at 2-3).  Crocs argues that Double Diamond has not pled any facts suggesting that the press release contains false statements and Double Diamond's "claims rest on, at best, alleged technicalities in how Crocs described the judgment in the Press Release."  *Id*. at 5.  "On that basis," Crocs requests that the Court grant its special motion, dismiss the lawsuit with prejudice, and award attorneys' fees under Colo. Rev. Stat. § 13-20-1101(4)(a).  *Id*. at 6.[9]  The Court has rejected Crocs' arguments and found that the complaint plausibly establishes that the press release contains false statements.  Accordingly, the Court denies Crocs' special motion to dismiss.[10]

---

[9] In its response, Double Diamond requests a hearing pursuant to Colo. Rev. Stat. § 13-20-1101(5).  Docket No. 12 at 10.  Double Diamond fails to cite any authority suggesting that the expedited hearing schedule for anti-SLAPP motions in section 13-20-1101(5) is applicable in federal court.  Accordingly, the Court denies this request. *See Moreau*, 641 F. Supp. 3d at 1133 n.12.

[10] As discussed earlier, the Court will dismiss plaintiff's intentional interference claim for failure to allege that Double Diamond had a reasonable likelihood of contracting with a particular third party.  In its motion, Crocs cites no authority suggesting that it is entitled to attorneys' fees under Colo. Rev. Stat. § 13-20-1101(4)(a) when some, but not all, claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Because the statute's purpose is focused on "screening out frivolous suits," *see Coomer*, 659 F. Supp. 3d at 1196, not just claims, the Court declines to award attorneys' fees for the dismissal of the intentional interference claim.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Crocs, Inc.'s Motion to Dismiss (Fed. R. Civ. P. 12(b)(6)) [Docket No. 7] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's fourth claim is **DISMISSED with prejudice**.  It is further

**ORDERED** that Defendant Crocs, Inc.'s Special Motion to Dismiss (C.R.S. § 13-20-1101) [Docket No. 8] is **DENIED**.

DATED March 11, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge