IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01790-PAB-KAS

DOUBLE DIAMOND DISTRIBUTION LTD.,

      Plaintiff,

v.

CROCS, INC.,

      Defendant.

---

## ORDER

---

      This matter comes before the Court on Defendant Crocs, Inc.'s Motion for Summary Judgment [Docket No. 71] and Plaintiff's Motion for Summary Judgment [Docket No. 73]. Plaintiff Double Diamond Distribution Ltd. ("Double Diamond") and defendant Crocs, Inc. ("Crocs") filed responses to the motions for summary judgment. Docket Nos. 74, 89. Double Diamond and Crocs filed replies in support of their respective motions for summary judgment. Docket Nos. 81, 91. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I.    FACTS[1]

      On April 3, 2006, Crocs sued Double Diamond and several other entities alleging infringement of certain of Crocs' patents in Case No. 06-cv-00605-PAB-MDB in the United States District Court for the District of Colorado. Docket No. 71 at 2, ¶ 1; Docket No. 73 at 1, ¶ 1. On June 26, 2022, Double Diamond and defendant U.S.A. Dawgs, Inc.

---

[1] The following facts are undisputed unless otherwise noted.

tendered offers of judgment to Crocs pursuant to Federal Rule of Civil Procedure 68. Docket No. 71 at 2, ¶ 2; Docket No. 73 at 2, ¶ 5.  On July 9, 2022, Crocs filed a notice of acceptance of Double Diamond's Rule 68 offer of judgment.  Docket No. 71 at 2, ¶ 3; Docket No. 73 at 2, ¶¶ 13, 14.  On July 12, 2022, the Clerk of Court entered judgment in favor of Crocs and against Double Diamond.  Docket No. 71 at 2, ¶ 4; Docket No. 73 at 3, ¶ 17.  On July 13, 2022, Crocs posted a press release on investors.crocs.com concerning the resolution of the lawsuit.  Docket No. 71 at 3, ¶ 5; Docket No. 73 at 4, ¶ 22.  The press release was distributed via PRNewswire.  Docket No. 71 at 3, ¶ 6; Docket No. 73 at 4, ¶ 22.  The press release states:

**Crocs secures long sought-after judgment of infringement against USA Dawgs and Double Diamond Distribution**

July 13, 2022

BROOMFIELD, Colo., July 13, 2022 /PRNewswire/ -- Crocs, Inc. (NADSAQ: CROX), a global leader in innovative casual footwear for women, men and children, announced a judgment of infringement against USA Dawgs and Double Diamond Distribution as a result of both companies' sales of imitation Crocs shoes.  In conjunction therewith, Crocs also obtained $6 million and $55,000 in damages, respectively, against the companies.

This case is the culmination of years long battles between the parties after USA Dawgs and Double Diamond Distribution began selling shoes that infringed Crocs' patents in 2006.  Both USA Dawgs and Double Diamond Distribution have since conceded the validity of Crocs' patent rights.

"We are fiercely protective of the Crocs brand and our iconic DNA.  We have zero tolerance for infringement of our intellectual property rights or for anyone who tries to benefit off the investments that we have made in our brand," said Daniel Hart, Executive Vice President and Chief Legal & Risk Officer at Crocs.  "This judgment not only reinforces the validity of our patent rights, it also reinforces our unrelenting determination to take forceful steps to protect our brand equity."

This judgment of infringement comes nearly one year to the day after Crocs filed lawsuits against 21 companies alleging infringement of its registered trademark rights in its clog designs.  The lawsuits, filed at the International Trade

Commission in addition to various U.S. District Courts around the country, seek an exclusion order against infringing product in addition to monetary damages for violations of Crocs' three dimensional trademark rights.

**About Crocs, Inc**.

Crocs, Inc. (Nasdaq: CROX) is a world leader in innovative casual footwear for women, men, and children, combining comfort and style with a value that consumers know and love.  The Company's brands include Crocs and HEYDUDE and its products are sold in more than 85 countries through wholesale and direct-to-consumer channels.  For more information on Crocs, Inc. please visit investors.crocs.com.  To learn more about our brands, please visit www.crocs.com or www.heydudeshoesusa.com or follow @Crocs or @heydudeshoes on Facebook, Instagram and Twitter.

Docket No. 71-1..

On July 13, 2023, Double Diamond filed the instant suit against Crocs in connection with the press release.  Docket No. 71 at 3, ¶ 7.  In its discovery responses, Double Diamond stated that it would rely on expert opinion testimony and lay testimony for its damage calculations.  *Id.* at 4, ¶¶ 12-14.  Double Diamond's responses, however, "did not identify evidence of any actual lost sales or any actual reputational harm caused by the Press Release."  *Id.* at 5, ¶ 15.[2]  Double Diamond did not disclose any experts.  *Id.*, ¶ 16.

In support of its damages, "Double Diamond recited information about Crocs's stock price in the period after the Press Release was issued, and general viewership statistics of sites that had posted stories about the Press Release."  *Id.*, ¶ 17 (emphasis

---

[2] Double Diamond denies this statement, but does not cite evidence supporting its denial and does not explain the factual basis for its denial.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A).  The Court therefore deems this fact to be admitted.

removed).  Crocs' share price increased from approximately $53.66 on or about July 13, 2022 to approximately $77.24 in one month.  Docket No. 73 at 5, ¶ 26.  Double Diamond produced "preliminary" calculations of its damages, which included:

> (i) corrective advertising in the amount of $146,971,771.93; (ii) disgorgement of Crocs's profits in the amount of $621,662,665.75; (iii) $78,750,000 for damage to Double Diamond's "business reputation, brand, goodwill, and diminished market growth" made by reference to Crocs's "Market Capitalization [] increase from July 12, 2022, to August 16, 2022"; (iv) "$31,033,270.53" in "actual and likely diversion of revenues, sales and lost profits"; (v) $220,000,500 in "statutory damages under the Colorado Consumer Protection Act"; (vi) $600,000 in attorney fees; and (vii) some as yet unknown quantity of actual and treble damages under the CCPA.

Docket No. 71 at 5, ¶ 18.  Double Diamond noted that "these preliminary calculations and quantifications regarding damages have neither been suggested nor examined by an expert to render an expert opinion" and that they were "subject to change based upon discovery information and documents."  *Id.* at 5-6, ¶ 19.

Double Diamond later produced additional, confidential documents that compiled Double Diamond's financial statements and provided "sales over time" spreadsheets.  *Id.* at 6, ¶ 20.  The financial statements and sales over time spreadsheets showed that Double Diamond's sales generally decreased in the period following the press release's publication.  *Id.*, ¶¶ 23, 24.  The financial statements and sales over time spreadsheets did not "themselves connect any decrease in Double Diamond's sales, or harm to Double Diamond's reputation, to the Press Release."  *Id.*, ¶ 21.[3]  Double Diamond has not provided any further information concerning its damages.  *Id.* at 7, ¶ 26.

---

[3] Double Diamond denies this statement, but does not cite evidence supporting its denial and does not explain the factual basis for its denial.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a

## II.   LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A

movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217

(D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving

party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of*

*Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The

---

**specific reference** to material in the record supporting the denial."); Fed. R. Civ. P.
56(c)(1)(A).  The Court therefore deems this fact to be admitted.

nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other.  *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

## III.    ANALYSIS

Double Diamond brings claims against Crocs for defamation (Claim One), trade libel (Claim Two), false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(A) et seq. (Claim Three), and violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105 (Claim Five).  Docket No. 1 at 21-27.[4]

### A.  Crocs' Motion for Summary Judgment

Crocs argues that it is entitled to summary judgment on Double Diamond's defamation, trade libel, and CCPA claims because Double Diamond has failed to produce evidence of damages, which is a necessary element of each claim.  *See* Docket No. 71 at 10-14.  As for Double Diamond's Lanham Act false advertising claim, Crocs argues that Double Diamond fails to produce evidence of harm.  *See id*. at 14-17.

---

[4] The Court granted Crocs' motion to dismiss Double Diamond's fourth claim for intentional interference with prospective contractual relations.  *See* Docket No. 35 at 26.

As an initial matter, the Court addresses Double Diamond's reliance on Steven Mann's declaration for its damage calculations.  Mr. Mann's declaration states that he is the President and CEO of Double Diamond.  Docket No. 90 at 1, ¶ 4.  It states that Mr. Mann is "intimately familiar with the financial details of Double Diamond."  *Id.*  Relying on his experience as President and CEO of Double Diamond, Mr. Mann's declaration states that he "formulated the calculation of damages" that Double Diamond sustained in connection to the press release.  *See id*. at 2, ¶ 8.  Mr. Mann's declaration calculates the following categories of damages: corrective advertising, the profits Crocs derived from the press release, damages to Double Diamond's reputation, brand, goodwill, and market growth, the actual and likely diversion of sales, and CCPA statutory, actual, and treble damages, and attorneys' fees.  *See id.* at 2-3.  For each of these calculations, Mr. Mann's declaration notes that these "[f]igures are preliminary, provided pursuant to the request of Crocs, and are subject to change based upon discovery and expert review, analysis, and report if required."  *See id.*

In Double Diamond's response to Crocs' motion for summary judgment, Double Diamond contends that it provided "calculations regarding . . .  damages (special and actual), corrective advertising and the remedy of disgorgement in its First Supplemental Initial Disclosures . . . and Response to Interrogatories."  Docket No. 89 at 16.  Double Diamonds states that these calculations "are based on a number of enumerated factors as formalized by Steven Mann and set forth in the calculations."  *Id.*  Double Diamond does not cite Mr. Mann's declaration in the fact section of either its motion for summary judgment or its response to Crocs' motion for summary judgment.  *See* Docket Nos. 73, 89.  Rather, in violation of this Court's practice standards, *see* Practice Standards (Civil

Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i-v, Double Diamond raises facts

purportedly supported by Mr. Mann's declaration in the analysis section of its response

to Crocs' motion for summary judgment. *See, e.g.*, Docket No. 89 at 12, 16.  Therefore,

the Court will not consider Mr. Mann's declaration in ruling on the instant motions.

However, even if the Court did consider Mr. Mann's declaration, the Court finds

that he is not qualified to provide calculations of the damages Double Diamond

sustained.  Double Diamond does not claim that Mr. Mann is an expert on damages.  In

its response to Crocs' summary judgment motion, Double Diamond says "[i]t is true that

Double Diamond's calculations are not analyzed by an expert witness for reasons set

out in Double Diamond's Rule 56(d) Motion (ECF No. 79).  Although they are analyzed

by Mr. Mann, who has been operating Double Diamond since 2006.  He knows his

business and the business of footwear for 20 years."  Docket No. 89 at 17.  Double

Diamond cites no rule or case that would make Mr. Mann's damages calculations

admissible to the extent they constitute expert opinion.  While the advisory committee's

notes to Rule 701 states that "most courts have permitted the owner or officer of a

business to testify to the value or projected profits of the business, without the necessity

of qualifying the witness as an accountant, appraiser, or similar expert," *see* Fed. R.

Evid. 701, advisory committee's note 2000 amendment, this advisory note does not

permit parties to "circumvent Rule 702 by offering expert testimony as lay opinion."  *See*

*James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011).

Here, Mr. Mann's declaration is not merely opining on the value of Double Diamond's

business or on its projected profits, but is calculating damages to Double Diamond's

business based on the press release's impact.  Such testimony goes beyond the limits

8

of lay opinion testimony.  *See James River*, 658 F.3d at 1214 (holding that business

owner's testimony, which closely resembled "a CEO's testimony about his business lost

profits . . .  based on more sophisticated economic models," was expert testimony

pursuant to Fed. R. Evid. 702 rather than lay opinion testimony pursuant Fed. R. Evid.

701).

Because the Court finds that Mr. Mann's declaration constitutes expert testimony

regarding the damages calculations, the Court must determine whether he is qualified

by "knowledge, skill, experience, training, or education" to render an opinion on the

damages that Double Diamond sustained from the press release.  *Roe v. FCA US LLC*,

42 F.4th 1175, 1180 (10th Cir. 2022) (quoting Fed. R. Evid. 702).  The proffered

opinions must also be assessed for reliability.  *Id.* at 1180–81; Fed. R. Evid. 702(b)–(d)

(requiring that the testimony be "based on sufficient facts or data," be the "product of

reliable principles and methods," and reflect a reliable application of "the principles and

methods to the facts of the case").

Regarding his calculations of damages, profits, diversion of revenues, and

attorneys' fees, the Court finds that Mr. Mann is not qualified to make or endorse those

opinions and calculations and that his opinions and calculations are unreliable.  Mr.

Mann's declaration lists no experience or training that enables him to offer an opinion

regarding the need for Double Diamond to engage "corrective advertising" and do so in

the amount of $146,971,771.93 in response to the press release.  *See* Docket No. 90 at

2.  He does not explain why his method of calculating this amount is appropriate on

these facts or why the amount is reliable.  Mr. Mann does not disclose any training or

expertise he has in calculating profits that a company like Crocs would receive from

issuing a defamatory press release.  *See id.*  Mr. Mann does not disclose any

experience or training that permits him to calculate "damage to business reputation,

brand, goodwill, and diminished market growth."  *See id.*  Furthermore, Mr. Mann's

vague reference to "[p]ublicly available Crocs's stock prices at Crocs.com and

companiesmarketcap.com," which purportedly supports his calculations of business

reputation damages, does not have indicia of reliability because its lack of specificity

does not permit the Court or Crocs to determine what information Mr. Mann is relying

upon.  *See id.*  Mr. Mann does not explain why he is qualified to calculate "actual and

likely diversion of revenues, sales and lost profits" and does not explain why his

proposed calculation of diverted revenue is reliable.  *See id.* at 3.  Mr. Mann's

calculation of statutory damages under the CCPA presumes public harm from the press

release, but Mr. Mann has provided no evidence of such harm.  *See id.*  Finally, Mr.

Mann's calculations of attorneys' fees are unsupported by records and lack a

description of his training and experience in reviewing attorneys' fees.  Thus, the Court

will not consider Mr. Mann's declaration.

### 1.  *Claim One: Defamation Claim*

Under Colorado law, the elements of a defamation claim differ depending upon

whether the statement involves a matter of public concern or whether the plaintiff is a

public or private figure.  *See Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL

2528624, at *4 (D. Colo. Mar. 15, 2023).  Therefore, the Court first addresses Double

Diamond's argument that the press release was not a matter of public concern.  *See*

Docket No. 89 at 10-11.  Double Diamond contends that "Crocs's decision to issue the

false Press Release on July 13, 2022, was not in furtherance of any public function of

10

trial regarding its private dispute with Double Diamond regarding patent infringement." *Id.* at 10. Double Diamond argues that the press release was not of public concern because the press release "had nothing to do" with Crocs' acceptance of the Rule 68 offer, the Rule 68 offer was not an admission of liability by Double Diamond, and there was no "adjudicative judgment on the merits" of Crocs' patent infringement claim. *Id.* Double Diamond contends that there "was no public concern as to what Crocs was doing as to its private intellectual property" and that "Double Diamond cannot be made into a public figure by Crocs to aid its defense." *Id.* at 11-12.

Whether a statement involves a matter of public concern is a question of law. *See Coomer*, 2023 WL 2528624, at *5. In the Court's order on Crocs' motion to dismiss, the Court found that the press release involves a matter of public concern. *See* Docket No. 35 at 7 n.3. As the Court explained, under Colorado law, a matter is of public concern "when the public may reasonably be expected to have a legitimate interest in what is being published" or when it "can be fairly considered as relating to any matter of political, social, or other concern to the community." *Coomer*, 2023 WL 2528624, at *5 (citations omitted); *see also Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1035 (10th Cir. 2013) ("in Colorado, public concern is interpreted broadly") (internal alterations, quotations, and citation omitted). The Court finds that the press release involves a matter of public concern because it discusses the conclusion of a 16-year-long federal court case involving a well-known company regarding patent infringement. *See* Docket No. 71-1. While "the mere filing of a civil lawsuit, by itself, is [not] sufficient to trigger 'public concern'" under Colorado law, the Court finds that the subject of that lawsuit, involving intellectual property matters and a

popular footwear, was of public concern.  *See Quigley v. Rosenthal*, 327 F.3d 1044,

1060 (10th Cir. 2003) ("it appears clear that the content of the lawsuit is the critical

factor" in determining whether a matter is of public concern under Colorado law); *see*

*also Correll v. Under Sec'y of Com. of Intell. Prop.*, 2022 WL 298125, at *2 (E.D. Va.

Jan. 13, 2022) (noting that "intellectual property matters are of public concern" for First

Amendment purposes).  Therefore, the Court rejects Double Diamond's argument that

the press release was not a matter of public concern.

Because the press release at issue involves a matter of public concern, Double

Diamond's defamation claim requires proof that the statement: (1) was defamatory; (2)

was materially false; (3) concerned the plaintiff; (4) was published to a third party; (5)

with actual malice; and (6) caused actual or special damages.  *Brokers' Choice of Am.,*

*Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017).  Crocs argues that

Double Diamond fails to meet its burden as to the sixth element because Double

Diamond fails to show causation between publication of the press release and Double

Diamond's lost profits.  *See* Docket No. 71 at 12-13.  Crocs contends that "Double

Diamond has offered no admissible evidence, be it expert analysis, customer

testimonials, surveys, or otherwise, that would connect that decline in any way to the

Press Release."  *Id.* at 13.

It is undisputed that Double Diamond's sales generally decreased in the period

following the press release's publication.  *Id*. at 6, ¶¶ 23, 24.  However, Double Diamond

fails to provide evidence that the July 13, 2022 press release caused all or part of this.

*See Rocky Mountain Planned Parenthood, Inc. v. Wagner,* 467 P.3d 287, 292 (Colo.

2020) ("it appears well settled that to establish causation, a plaintiff must show, in

12

substance, that the defendant's actions or inactions were both what we will call the

'cause in fact' and the 'legal" or 'proximate cause' of the plaintiff's injury"); *Marcus v.*

*Swanson*, 539 P.3d 605, 611 (Kan. 2023) ("Proof of injury to reputation requires

evidence to establish a causal relationship between the defamatory statements and the

injury to [plaintiff's] reputation").

It is undisputed that Crocs' share price increased from approximately $53.66 on

or about July 13, 2022 to approximately $77.24 in one month. Docket No. 73 at 5, ¶ 26.

However, this fact alone is not material to the issue of whether Double Diamond

sustained damages. *See Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified*

*Home Inspectors*, 36 F.4th 1238, 1243 (10th Cir. 2022) (declining to "infer harm" from

the fact that defendant's membership levels increased following its use of the

defamatory statement because plaintiff "supplies no evidence that its own membership

levels were affected by" the defamatory statement).

Because Double Diamond fails to provide evidence regarding an essential

element of its defamation claim, namely, actual or special damages, the burden shifts to

Double Diamond to come forward with evidence that shows there is a genuine issue of

material fact as to whether the press release caused Double Diamond's loss of

business. *See Bausman.*, 252 F.3d at 1115. Double Diamond, however, does not point

to any evidence suggesting causation and therefore fails to carry its burden. *See*

*Connell Solera, LLC v. Lubrizol Advanced Materials, Inc.,* 584 F. Supp. 3d 980, 989 (D.

Colo. 2022) (because defendant argued that there was a lack of evidence regarding an

element of plaintiff's claim, it was plaintiff's "burden in responding to a motion for

summary judgment to go beyond the pleadings and set forth specific facts that would be

admissible in evidence in the event of trial from which a rational trier of fact could find

for the nonmovant," and plaintiff failed to do so because plaintiff did not "cite any

evidence in either its 'Response to Movant's Material Facts' or its own 'Statement of

Additional Material Facts'" that supports its claim) (internal quotation and citation

omitted).  Double Diamond has not carried its burden of showing actual or special

damages on its defamation claim.  Therefore, the Court will grant summary judgment for

Crocs on Claim One.

### 2.  Claim Two: Trade Libel Claim

To establish a claim for trade libel under Colorado law, a plaintiff must prove the

following elements: "(1) a false statement, (2) published to a third party, (3) derogatory

to the plaintiff's business in general . . . or its quality, and (4) through which the

defendant intended to cause harm to the plaintiff's pecuniary interest, or either

recognized or should have recognized that it was likely to do so; (5) with malice; (6)

thus, causing special damages."[5] *Examination Bd. of Pro. Home Inspectors*, 519 F.

Supp. 3d at 918.  Crocs argues that Double Diamond fails to offer evidence in support

of the sixth element.  *See* Docket No. 71 at 11.

"Special damages are limited to specific monetary losses, if any, which a plaintiff

incurs as the result of publication of statements or pictures by a defendant.  Special

damages do not include injuries to a plaintiff's reputation or feelings which do not result

in specific monetary loss."  *Lind v. O'Reilly*, 636 P.2d 1319, 1321 (Colo. App. 1981)

---

[5] Under Colorado law, "trade libel" and "commercial disparagement" are considered to be the same cause of action.  *See Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 917 & n.3 (finding that plaintiff's claims for "trade libel" and "commercial disparagement" "appear to be the same claim").  Therefore, the Court will consider the law governing both causes of action.

(internal quotations omitted).  Under Colorado law, "[i]f a plaintiff cannot show special damages, no cause of action is established."  *Teilhaber Mfg. Co. v. Unarco Materials Storage, a Div. of Unarco Indus., Inc.,* 791 P.2d 1164, 1167 (Colo. App. 1989).  "To make the required showing, a plaintiff usually must identify those persons who refuse to purchase his product because of the disparagement."  *Id.*  However, "[i]f it is not a practical possibility to show specific losses, damages may then be proved by evidence similar to that used to prove lost profits resulting from a breach of contract."  *Id.* at 1168.  "Consequently, if a plaintiff can present sufficient evidence, using detailed statistical and expert proof, to exclude the possibility that other factors caused the loss of general business, recovery is allowed."  *See id.*

Here, Double Diamond does not "identify those persons who refuse" to purchase its products due to the press release.  *See id.*  And Double Diamond does not provide any information that demonstrates that it is not a "practical possibility" to show specific losses.  For this reason alone, Double Diamond fails to support the damages element for trade libel.  But even if Double Diamond had shown a lack of "practical possibility," Double Diamond would have to present sufficient evidence for special damages "using detailed statistical and expert proof."  *See id.*  Plaintiff did not endorse any expert, much less an expert qualified to identify loss of revenue that must "exclude the possibility that other factors caused the loss of general business."  *See id.*  Double Diamond provides evidence of a loss of general business following publication of the press release.  *See* Docket No. 71 at 6, ¶¶ 22-24.  However, Double Diamond provides no "detailed statistical and expert proof" that shows its loss of business was caused by the press release and not caused by other factors.  *See Teilhaber*, 791 P.2d at 1168; *see also*

*Synygy, Inc. v. ZS Assocs.*, *Inc.*, 110 F. Supp. 3d 602, 619 (E.D. Pa. 2015) ("It follows
that on summary judgment a plaintiff must set forth evidence sufficient to show either a
general diminution in sales and 'evidence of a causal connection between [the
disparaging statement] and the decrease in sales' or specific lost sales" in support of a
commercial disparagement claim) (applying Pennsylvania law) (quoting *Brooks Power
Sys., Inc. v. Ziff Commc'ns, Inc.*, 1994 WL 444725, at *4 (E.D. Pa. Aug. 17, 1994)
("Without any evidence of causation, plaintiff cannot rely only on an unexplained general
diminution in sales to establish pecuniary loss.")).

Double Diamond fails to raise a genuine issue of material fact as to whether it
sustained special damages from the press release's publication.  Therefore, Double
Diamond fails to prove an essential element of its trade libel claim.  *See Brokers' Choice
of Am., Inc.*, 861 F.3d at 1109.  The Court will grant summary judgment for Crocs on
Claim Two.

### 3.  Claim Three: Lanham Act False Advertising Claim

The Lanham Act prohibits a person from using, in commercial advertising or
promotion, any "false or misleading description of fact" that "misrepresents the nature,
characteristics, qualities, or geographic origin" of his or another person's services or
commercial activities.  15 U.S.C. § 1125(a)(1)(B); *Wilson v. AdvisorLaw LLC*, No. 17-cv-
1525-MSK, 2018 WL 4932088, at *3 (D. Colo. Oct. 11, 2018).  A false advertising claim
under the Lanham Act requires proof that: (1) defendant "made a false or misleading
description of fact or representation of fact in a commercial advertisement about its own
or another's product;" (2) defendant's "misrepresentation was material, in that it was
likely to influence the purchasing decision;" (3) defendant's "misrepresentation actually

deceived or had the tendency to deceive a substantial segment of its audience;" (4)
defendant "placed the false or misleading statement in interstate commerce;" and (5)
plaintiff "has been or is likely to be injured as a result of the misrepresentation, either by
direct diversion of sales or by a lessening of goodwill associated with its products."
*Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643-44 (10th Cir. 2022) (internal
quotations, alterations, and citations omitted); *see also Warming Trends, LLC v. Stone*,
No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *6 (D. Colo. Mar. 30, 2023).

Crocs challenges Double Diamond's showing as to the third and fifth element.
*See* Docket No. 71 at 14-17.  Crocs contends that Double Diamond fails to provide
evidence of harm and fails "to show that a single customer was deceived in any way by
the Press Release."  *Id.* at 14.  Double Diamond responds that "this Court does not
have to dismiss the Lanham Act claim because a remedy has not been chosen."
Docket No. 89 at 13.  Double Diamond argues that it need not provide proof of actual
consumer harm and "in situations such as this where there are literally false statements
directed by one competitor to another competitor, harm to goodwill and reputation, and
actual deception to consumers, can be presumed."  *Id.* at 13-14.

To establish the fifth element, Double Diamond must prove "an injury to a
commercial interest in sales or business reputation proximately caused by the
defendant's misrepresentations*." Am. Soc'y of Home Inspectors, Inc.*, 36 F.4th at 1242
(citation omitted).  Double Diamond's arguments that the Lanham Act does "not require
proof of a defendant's state of mind to impose liability for its false advertising" and that
the false advertising claim need not be dismissed "because a remedy has not been
chosen" are non-responsive to the requirement that Double Diamond must show injury

17

and causation to prevail on its false advertising claim.  *See* Docket No. 89 at 13.

Regardless of what remedy Double Diamond seeks, it must show that it has been

injured by the press release.  *See Sycamore*, 29 F.4th at 643-44.  The fact that the

press release was allegedly a "false and misleading description of fact and

representation of fact aimed squarely at Double Diamond" and that "[l]iability is clear as

to Crocs's intent with its false Press Release" does not free Double Diamond of its

obligation to show injury and causation.  *See* Docket No. 89 at 12, 13.

       To the extent that Double Diamond asserts that it is entitled to a presumption of

injury, the Court rejects that argument.  It is true that "once a plaintiff has proven that the

defendant has falsely and materially inflated the value of its product (or deflated the

value of the plaintiff's product), and that the plaintiff and defendant are the only two

significant participants in a market or submarket, courts may presume that the

defendant has caused the plaintiff to suffer an injury." *Vitamins Online, Inc. v.

Heartwise, Inc.*, 71 F.4th 1222, 1240 (10th Cir. 2023).  However, Double Diamond has

adduced no evidence showing that Double Diamond and Crocs are the only two

significant participants in a market or submarket.  In determining whether a plaintiff is

entitled to the presumption of injury, courts must "properly scrutinize a party's proffered

market definition."  *See id.*  Double Diamond offers no market definition and no

evidence that the market in which Crocs and Double Diamond compete is "essentially a

two-player market."  *See id.* at 1241.  Therefore, Double Diamond fails to show that it is

entitled to a presumption of injury.

       Double Diamond's evidence shows a general loss of business following

publication of the press release.  *See* Docket No. 71 at 6, ¶¶ 23, 24.  However, as

discussed regarding Double Diamond's trade libel claim, Double Diamond fails to show

that its loss of business was proximately caused by the press release.  Double Diamond

therefore does not provide the necessary causal link between its purported injury and

Crocs' allegedly defamatory press release.  *See Gen. Steel Domestic Sales, LLC v.*

*Chumley,* No. 10-cv-01398-PAB-KLM, 2013 WL 1900562, at *14 (D. Colo. May 7, 2013)

(finding that plaintiff "failed to put on evidence that it lost customers, revenue, or

goodwill, or was otherwise harmed" by defendant's false statements in support of its

Lanham Act claim), *aff'd*, 627 F. App'x 682 (10th Cir. 2015); *Am. Soc'y of Home*

*Inspectors, Inc.*, 36 F.4th at 1243 ("At the summary judgment stage, [plaintiff] must do

more than merely speculate that it has been harmed – it must provide evidence from

which a reasonable jury could conclude that an injury to [plaintiff] has occurred" to

prevail on its Lanham Act claim.); *Cascade Yarns, Inc. v. Knitting Fever, Inc.,* 2015 WL

3407882, at *6-7 (W.D. Wash. May 27, 2015) (granting motion for judgment as a matter

of law on the Lanham Act false advertising claim where plaintiff "put forward no

evidence . . . causally linking a drop in its business to the actions by [defendant] at issue

in this case" and plaintiff's "damages evidence consisted entirely of a demonstrative

exhibit illustrating its declining revenues" and "failed to provide any evidentiary basis –

through expert testimony or otherwise – from which the jury could have linked these

losses" to the defamatory statement).

　　　Double Diamond fails to raise a genuine issue of material fact as to whether it

sustained injuries from the press release's publication.  Therefore, Double Diamond fails

to prove an essential element of its defamation claim. *See Sycamore*, 29 F.4th 630 at

643-44. The Court will grant summary judgment for Crocs on Claim Three.[6]

### 4. Claim Five: Colorado Consumer Protection Act Claim

To state a claim under the CCPA, a plaintiff must establish the following

elements:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that
> the challenged practice occurred in the course of defendant's business, vocation,
> or occupation; (3) that it significantly impacts the public as actual or potential
> consumers of the defendant's goods, services, or property; (4) that the plaintiff
> suffered injury in fact to a legally protected interest; and (5) that the challenged
> practice caused the plaintiff's injury.

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo.

2012)); *see also Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1301 (10th Cir.

2022). "Due to the CCPA's underlying goal of protecting consumers and the public,

plaintiffs are prohibited from bringing purely private causes of action under the CCPA."

*Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 919 (citing *Rhino Linings

USA, Inc. v. Rocky Mountain Rhino Lining*, 62 P.3d 142, 149 (Colo. 2003)).

Crocs challenges Double Diamond's showing regarding the fourth and fifth

element of its CCPA claim: whether Double Diamond suffered an injury in fact and

whether that injury was caused by Crocs' publication of the press release. *See* Docket

No. 71 at 12.[7] Double Diamond responds by providing an estimate of the statutory

---

[6] Because the Court finds that Double Diamond fails to provide evidence
regarding the fifth element of the Lanham Act claim, it does not reach Crocs' argument
that Double Diamond fails to provide evidence in support of the third element. *See*
Docket No. 16-17.

[7] In response to Crocs' motion, Double Diamond addresses its showing to the
third element, which is not in dispute for purposes of this motion. *See* Docket No. 89 at
17-18 (Double Diamond "does have to show how Crocs's false Press Release impacted
the Colorado public . . . [b]ut Double Diamond cannot do so because in discovery Crocs

damages Crocs would owe if found liable under the CCPA, but does not explain how this is relevant to the injury-in-fact and causation analysis.  *See* Docket No. 89 at 17.  Furthermore, in doing so, Double Diamond refers to "the figure provided by Crocs in discovery from PRNewswire," *see* Docket No. 89 at 17, which Double Diamond does not cite in the fact section of either its motion for summary judgment or its response to Crocs' motion for summary judgment.  *See* Docket Nos. 73, 89.

Although the CCPA "does not specify injuries against which it is intended to guard," it does define "prohibited actions that are likely to injure the public."  *Hall v. Walter*, 969 P.2d 224, 236 (Colo. 1998).  Pursuant to the CCPA, "[d]isparag[ing] the goods, services, property, or business of another by false or misleading representation of fact" is one such prohibited action.  *See* Colo. Rev. Stat. § 6-1-105(1)(h).  Although Crocs purports to challenge Double Diamond's showing as to the fourth element, Crocs does not argue that disparagement, as described in § 6-10-105(1)(h), is not a "legal interest protected by the CCPA."  *See Allstate Ins. Co. v. Cruz,* No. 24-cv-00933-NYW-CYC, 2025 WL 2337093, at *8 (D. Colo. Aug. 13, 2025) (holding that because the "CCPA enumerates disparaging the business of another by false or misleading representation of fact as an actionable deceptive trade practice," that plaintiff adequately alleged an injury-in-fact necessary to satisfy the fourth element) (applying Colorado law) (internal quotation and alternations omitted).

Rather, Crocs primarily challenges Double Diamond's showing as to the fifth element: that Double Diamond fails to adduce evidence showing that the publication

---

refused to provide its list of people in Colorado that received the Press Release and also said that such a list did not exist.").

caused Double Diamond's injury.  *See* Docket No. 71 at 10-14.  For the same reasons

discussed above, Double Diamond fails to show that its loss of business was caused by

the press release given that it points to no evidence that supports causation.  Therefore,

Double Diamond cannot prevail on its CCPA claim.  *See Lewis v. Emil Clayton*

*Plumbing Co.*, 25 P.3d 1254, 1258 (Colo. App. 2000) (granting summary judgment for

defendants where "plaintiffs have not provided evidence to establish the last CCPA

element of causation"); *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D.

Colo. 2018) ("If a plaintiff cannot show a causal link between a defendant's deceptive

trade practices and the plaintiff's injury, the plaintiff cannot recover damages under the

CCPA."), *aff'd*, 814 F. App'x 408 (10th Cir. 2020).  Therefore, the Court will grant

summary judgment in favor of Crocs on Claim Five.

### B. <u>Double Diamond's Partial Motion for Summary Judgment</u>

Double Diamond moves for partial summary judgment on Crocs' "defense that

the statements in its Press Release are true and that the Rule 68 Offer of Judgment that

Crocs accepted from Double Diamond means that it received an adjudicated patent

infringement judgment against Double Diamond."  Docket No.73 at 6.  Furthermore,

Double Diamond moves for partial summary judgment on Crocs' affirmative defenses.

*Id.* at 11.

For the reasons discussed above, Crocs is entitled to summary judgment on

Double Diamond's claims for defamation, trade libel, Lanham Act false advertising, and

violation of the CCPA.  Because Crocs has negated an essential element of each of

Double Diamond's claims, the Court will not reach the issue of whether Double

Diamond is entitled to partial summary judgment on Crocs' "truth defense" and to summary judgment on Crocs' affirmative defenses.

Therefore, the Court will deny Double Diamond's motion for summary judgment. Docket No. 73.

## IV.   CONCLUSION

Therefore, it is

**ORDERED** that Defendant Crocs, Inc's Motion for Summary Judgment [Docket No. 71] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 73] is **DENIED**.  It is further

**ORDERED** that plaintiff Double Diamond Distribution Ltd.'s first, second, third, and fifth claims against defendant Crocs, Inc. are **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED September 24, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge